ATTACHMENT A

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

| | |
|---|---|
| GREGORY SELLMAN, an individual; and VINCENT NAVARRE, an individual, <br><br>                         Plaintiffs,<br><br>v.<br><br>BOEHRINGER INGELHEIM PHARMACEUTICALS, INC., a Delaware corporation; ROBERT KIME, an individual,<br><br>                         Defendants. | No.<br><br>COMPLAINT |

COMES NOW the Plaintiffs, GREGORY SELLMAN and VINCENT NAVARRE, by and through their attorneys McGavick Graves, P.S. and John M. Cummings, and for causes of action against BOEHRINGER INGELHEIM PHARMACEUTICALS, INC. and ROBERT KIME, and states as follows:

## I.  PARTIES

1.1   GREGORY SELLMAN is a resident of King County Washington. He was employed by defendant Boehringer Ingelheim, Inc. from 2014 until December 17, 2020.

1.2   VINCENT NAVARRE is a resident of Pierce County, Washington. He was employed by defendant Boehringer Ingelheim from 2017 until March 3, 2021.

1.3   BOEHRINGER INGELHEIM PHARMACEUTICALS, INC. (BIPI) is a

COMPLAINT - 1

**MCGAVICK GRAVES**
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

Delaware corporation with its principal place of business in Ridgefield, Connecticut and regional offices throughout the United States. The facts material to this matter occurred in the State of Washington.

1.4   ROBERT KIME is a Commercial Business Director for BIPI. Mr. Kime resides in San Francisco, California.

## II.   JURISDICAITON AND VENUE

2.1   This Court has jurisdiction over this matter pursuant to RCW 2.08.010.

2.2   A substantial part of the events and omissions giving rise to this claim occurred in King County, Washington.

2.3   Venue is properly before this Court pursuant to RCW 4.12.020.

## III.   FACTS

3.1   BIPI is a pharmaceuticals corporation that sells medications to medical providers throughout the State of Washington.

3.2   Greg Sellman began working for BIPI in 2014. By 2016, Mr. Sellman had risen to the position of Senior Diabetes Business Manager. In this position, he supervised Diabetes Business Specialists – BIPI salespeople selling diabetes treatments to medical providers.

3.3   Mr. Sellman was an excellent supervisor. Prior to December 17, 2020, he had never been disciplined by BIPI or Mr. Kime. His supervisees regularly achieved top metrics at BIPI, and his salespeople were among the top producing Diabetes Business Specialists in the company. He regularly advocated for his supervisees to be promoted, and he advocated to protect their jobs.

3.4   In 2017, Vince Navarre began working for BIPI on a contract basis selling diabetes medications as a Washington State Diabetes Business Specialist Overlay. In 2018, he

COMPLAINT - 2

McGAVICK GRAVES
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

was hired full time as a Diabetes Business Specialist and continued to sell diabetes medications. At all times relevant to this matter, Mr. Navarre was supervised by Mr. Sellman.

3.5 Mr. Navarre was an excellent employee. He achieved top metrics in the company on a regular basis, often exceeding sales goals and ranking among the top Diabetes Business Specialists in the company.

3.6 Mr. Navarre is disabled. Prior to May 2019, he was diagnosed with benign prostatic hyperplasia (BPH), a disorder which causes him to experience an unpredictable, sudden, and urgent need to urinate. When he experiences this sudden urge to urinate, he must quickly find a place to urinate. If he resists or ignores this urge, he can lose bladder control.

3.7 Mr. Navarre treats his BPH with Tamsulosin, a medication developed and distributed by BIPI as Flomax.

3.8 On May 7 2019, Mr. Navarre conducted an in-person sales call at Pine Family Practice (the Pine Clinic), a clinic located at 2240 East Lincoln Avenue in Sunnyside, Washington. The Pine Clinic is located in a rural part of Sunnyside, and the clinic is surrounded on two sides by a large parking lot. Mr. Navarre parked his car in the northwest corner of the parking lot facing West, so his car was parallel with the lot's northern border and perpendicular to the lot's western border. He parked in a space away from the clinic's entrance, leaving more easily accessible spaces open for patients of the clinic.

3.9 The Pine Clinic parking lot has one entrance: a driveway in the southwest corner of the lot which opens onto East Lincoln Avenue, beyond which lies a large field. To the West, the parking lot is bordered by double fence, beyond which is a cow pasture or field. The western fence on the Pine Clinic side is opaque and steps up progressively higher as it runs North. The western fence on the field side is transparent chain-link. To the North, the parking lot is bordered

COMPLAINT - 3

**M**c**G**AVICK
**G**RAVES
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

by a tall opaque fence, beyond which is a vacant field and dirt lot. To the East, the parking lot is bordered by a tall opaque fence. The clinic building sits in the southeast corner of the parking lot. Landscaping rings the parking lot, but the landscaping is tallest and densest in the northwest and northeast corners of the parking lot. Attached as **Exhibit A** are accurate images of the Pine Clinic as seen from above, from the east, from the south, and from the west, respectively.

3.10   After Mr. Navarre completed his sales call at the Pine Clinic on May 7, 2019, he returned to his car to begin the three-hour drive back to Western Washington. When he arrived at his car, he felt the sudden urge to urinate.

3.11   There were no other people in the parking lot when Mr. Navarre felt the sudden urge to urinate.

3.12   If Mr. Navarre had ignored the urge to urinate, he would likely have lost bladder control.

3.13   Mr. Navarre did not believe he could get back to the clinic without losing bladder control.

3.14   Mr. Navarre went to the northwest corner of his car and bent down, pretending to inspect the tire of his car. From this position, he was surrounded on three sides by opaque barriers: the opaque fences to the north and west and his car to the south. He was also in the most densely landscaped portion of the parking lot. To the east, there were no people present in the parking lot, and the eastern fence was opaque.

3.15   While in this position, Mr. Navarre urinated.

3.16   As Mr. Navarre was urinating, a car came into the parking lot, and the occupant presumably saw him urinating.

3.17   After urinating, Mr. Navarre returned to his car and drove three hours to his home

COMPLAINT - 4

**McGavick Graves**
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

in Western Washington.

3.18 A sales representative from another pharmaceutical company told a BIPI employee someone had seen Mr. Navarre urinate in the Pine Clinic parking lot. This employee told Mr. Sellman.

3.19 Mr. Sellman promptly consulted with BIPI Human Resources Department and his Sales Director about the incident. The Human Resources employee reminded Mr. Sellman of Mr. Navarre's age and noted that Mr. Navarre may have a medical condition which caused incontinence.

3.20 Mr. Sellman spoke to Mr. Navarre on May 17, 2019. Mr. Navarre disclosed that he had BPH and that he could not help the sudden urge to urinate. Mr. Navarre explained that he made the best decision available to him at the time.

3.21 Mr. Sellman verbally counseled Mr. Navarre pursuant to BIPI's progressive discipline policy and later memorialized the counseling session in an email copied to the Sales Director and BIPI Human Resources.

3.22 As a result of this conversation, Mr. Navarre devised a homemade portable urinal and brought it with him in the trunk of his car when he went on sales calls.

3.23 On May 29, 2019, Mr. Sellman informed Human Resources of Mr. Navarre's disability and explained the Pine Clinic incident.

3.24 In the months that followed, Mr. Sellman and Mr. Navarre continued to excel in their respective positions. In fact, Mr. Sellman's entire team excelled at their positions, becoming one of the top diabetes sales teams in the company.

3.25 In 2020, Mr. Navarre became eligible for a promotion to Executive Diabetes Business Specialist. By September 2020, he was the Number 2 Diabetes Business Specialist in

COMPLAINT - 5

**M c G A V I C K**
**G R A V E S**
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

the U.S. His year-to-date metric was 127.26% of goal attainment, and he trailed the Number 1 position in YTD Metric percentage by only 2.45%.

3.26    In the September 2020, BIPI reorganized its diabetes sale teams and eliminated the position of a Diabetes Business Specialist (the "eliminated employee;" pronouns: she/her) on Mr. Sellman's team who had received repeated "Below Expectations" ratings. This employee was deficient in sales and team work skills, business planning, and execution.

3.27    In October 2020, Mr. Navarre was promoted to Senior Diabetes Business Specialist. Mr. Kime supported the promotion and consulted BIPI Human Resources when evaluating whether to promote Mr. Navarre. Mr. Kime would later point to Mr. Navarre as an exemplary employee.

3.28    Mr. Sellman advocated for and supported Mr. Navarre's promotion in 2020. Mr. Kime and other leadership at BIPI knew that Mr. Sellman supported Mr. Navarre's promotion.

3.29    Also in October 2020, the employee who had been eliminated in the September reorganization interviewed with BIPI in an attempt to be re-hired as a Diabetes Business Specialist. Mr. Sellman advocated for her re-hire. Mr. Kime, however, refused to re-hire her.

3.30    Two days after the eliminated employee was informed that she would not be re-hired, she filed a complaint making multiple false allegations about Mr. Navarre. None of these allegations had anything to do with the Pine Clinic incident.

3.31    BIPI Human Resources employee Teresa LaMalva investigated the eliminated employee's complaints.

3.32    Ms. LaMalva interviewed Mr. Sellman on three separate occasions in late October and early November 2020. During the first interview with Ms. LaMalva, Mr. Sellman indicated that he had no evidence which would support the eliminated employee's allegations against Mr.

M c G AVICK
G RAVES
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

Navarre. He told her that the eliminated employee's allegations were news to him.

3.33 During Mr. Sellman's second interview with Ms. LaMalva, she asked him whether he had reported the Pine Clinic incident to Human Resources prior to September 2020. Mr. Sellman indicated he had sent an email on May 29, 2019. He later provided this email to Ms. LaMalva.

3.34 During Mr. Sellman's third interview with Ms. LaMalva, she asked him why he promoted Mr. Navarre and why he gave him a rating of "Above Expectations."

3.35 By November 2020, Mr. Navarre was ranked Number 1 in the United States among Diabetes Overlay Representatives at BIPI, and his year-to-date metric was 125.46% of goal attainment.

3.36 Ms. LaMalva interviewed Mr. Navarre on November 17, 2020. Mr. Navarre denied all of the allegations made by the eliminated employee.

3.37 Ms. LaMalva concluded that two of the eliminated employee's allegations against Mr. Navarre were unfounded.

3.38 On December 17, 2020, Mr. Kime suddenly demoted Mr. Navarre, withdrew all promotions and awards he had earned for 2020, and informed him that despite his excellent performance, his end-of-year performance review would be artificially deflated to a "below expectations overall rating for 2020."

3.39 The fact that Mr. Navarre urinated in the parking lot of the Pine Clinic – a matter for which he had already been disciplined and which was a direct symptom of Mr. Navarre's disability – was a substantial factor in BIPI's and Mr. Kime's decision to demote Mr. Navarre.

3.40 That same day, Mr. Kime terminated Mr. Sellman, alleging that he had withheld information about the Pine Clinic incident from BIPI. This allegation of withholding information

COMPLAINT - 7

**MCGAVICK GRAVES**
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

was BIPI's sole stated reason for terminating Mr. Sellman.

3.41   Mr. Kime's claim that Mr. Sellman withheld information was not true. Mr. Sellman had provided his Sales Director and Human Resources with information about the Pine Clinic incident as early as May 29, 2019.

3.42   Mr. Sellman was unemployed for approximately six weeks following his termination. He is now employed in a non-supervisory capacity at another company. Because he was terminated as a senior supervisor, it is unlikely he will be able to attain a higher level of responsibility than his current position for the remainder of his career.

3.43   Mr. Navarre continued to outperform his colleagues at BIPI throughout December 2020. He performed better in December 2020 than he had in September 2020. Despite Mr. Navarre's performance, Mr. Kime gave him a below expectations overall rating for 2020.

3.44   On January 11, 2021, Mr. Navarre filed a discrimination complaint with Marquette Wilson in BIPI's Human Resources Department. Mr. Navarre explained that he had been deprived of the ability to meaningfully respond to the complaint because he was not meaningfully involved in the investigation, he was never given the name of the complainant, and all but one of the allegations were so vague as to make meaningful response impossible. The complaint requested a complete copy of his personnel file pursuant to RCW 49.12.250.

3.45   Mr. Navarre continued to perform exceptionally. BIPI continued to reap the benefits of Mr. Navarre's hard work while Mr. Navarre drew a salary that had been reduced by his demotion.

3.46   Mr. Navarre was interviewed by Kristina Cronk of BIPI Human Resources regarding his Complaint of January 11, 2021. During this interview, Mr. Navarre denied the allegations made against him by the eliminated employee.

COMPLAINT - 8

**M c G A V I C K
G R A V E S**
A Professional Services Corporation
1102 Broadway, Suite 500 ● Tacoma, Washington 98402
Telephone (253) 627-1181 ● Fax (253) 627-2247

3.47 Upon information and belief, Ms. Cronk did not conduct a diligent investigation of Mr. Navarre's discrimination complaint. No apparent progress was made on the investigation for over a month.

3.48 By March 3, 2021, it appeared to Mr. Navarre that BIPI had no intention of issuing findings about his complaint of discrimination or affording him the rights guaranteed by RCW 49.121.250.

3.49 On March 3, 2021, Mr. Navarre resigned from BIPI due to BIPI's poor treatment of him, discrimination against him on the basis of his disability, and its failure to respond meaningfully to his January 11, 2021, complaint of discrimination.

3.50 The day after Mr. Navarre resigned, Ms. Cronk contacted Mr. Navarre and asked to discuss his January 11, 2021 complaint.

3.51 On March 9, 2021, Ms. Cronk acknowledged that Mr. Navarre had been demoted "based on the behavior observed" at the Pine Clinic in May 2019. She confirmed that BIPI would have disciplined Mr. Navarre for experiencing the symptoms of his disability even if he had informed them of his disability before May 2019 and requested accommodation.

3.52 Ms. Cronk claimed that the reason BIPI was punishing Mr. Navarre in 2020 was "solely" because of Mr. Sellman's "failure to report the matter to employee relations."

3.53 Ms. Cronk's claim that Mr. Sellman failed to report the Pine Clinic incident was not true.

3.54 Ms. Cronk claimed that the information Mr. Navarre provided during her February 13, 2021, interview with him "did not differ from the overall facts and findings of the investigation conducted by Terri LaMalva." This statement was not true; Mr. Navarre denied all the allegations made by the eliminated employee.

COMPLAINT - 9

McGAVICK GRAVES
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

3.55   Ms. Cronk only provided Mr. Navarre a copy of his personnel file after Mr. Navarre resigned.

### IV.   FIRST CAUSE OF ACTION

**Violation of the Washington Law Against Discrimination (49.60 RCW):**
**Disability Discrimination Against Vince Navarre**

4.1   Vince Navarre is disabled.

4.2   The conduct, acts, and omissions of defendants against Vince Navarre constitute discrimination based on the presence of a physical disability in violation of the Washington Law Against Discrimination, Chapter 49.60 RCW, including but not limited to the following separate courses of conduct: (a) hostile work environment, (b) discrimination in the terms and conditions of employment, (c) retaliation, and (d) constructive discharge, and (e) wrongful discharge.

4.3   As a resultant and proximate cause of the conduct of defendants, Mr. Navarre has suffered injuries and damages including economic loss and emotional distress in an amount to be proved at trial.

### V.   SECOND CAUSE OF ACTION

**Violation of the Washington Law Against Discrimination (49.60 RCW):**
**Unlawful Termination of Greg Sellman**

5.1   The conduct, acts, and omissions of defendants in terminating Greg Sellman's employment violated the Washington Law Against Discrimination. Mr. Sellman engaged in statutorily protected activity, including but not limited to accommodating Mr. Navarre's disability, choosing not to punish Mr. Navarre twice for a single incident related to his disability, and advocating for Mr. Navarre's promotion in September 2020. He was terminated for failing to argue against Mr. Navarre's promotion. His decision to advocate for Mr. Navarre's promotion and refusal to advocate for Mr. Navarre's excessive punishment was a substantial factor in Mr.

COMPLAINT - 10

**McGavick**
**Graves**
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

Sellman's termination.

5.2     As a resultant and proximate cause of the conduct of defendants, Mr. Sellman has suffered injuries and damages including economic loss and emotional distress in an amount to be proved at trial.

## VI.     FOURTH CAUSE OF ACTION
### Unlawful Termination of Greg Sellman in Violation of Public Policy

6.1     Washington State has a clear public policy against employers taking adverse employment actions against employees based on the presence of a physical disability.

6.2     Mr. Navarre is disabled.

6.3     Consistent with BIPI's progressive discipline policy, Mr. Sellman verbally counseled Mr. Navarre after the Pine Clinic Incident and sent an email to Human Resources explaining what had happened. When Mr. Navarre did excellent work for BIPI, Mr. Sellman advocated for Mr. Navarre's promotion. Mr. Sellman did not see Mr. Navarre's disability as a reason to deny him a promotion.

6.4     Defendants terminated Mr. Sellman for failing to oppose Mr. Navarre's promotion. Defendants expected to oppose Mr. Navarre's promotion solely on the basis of the Pine Clinic incident, an incident for which Mr. Navarre had already been punished.

6.5     Defendants' actions discourage conduct which is mandated by clear public policy.

6.6     Defendants claimed reason for terminating Mr. Sellman is false and defendants knew it was false.

## VII.     FIFTH CAUSE OF ACTION
### Wage Theft

7.1     Both defendants were employers of both Greg Sellman and Vince Navarre when they worked at BIPI.

COMPLAINT - 11



**MCGAVICK GRAVES**
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

7.2     Defendants wilfully and with intent to deprive him of part of his wages paid Vince Navarre a lower wage than the wage they were obligated to pay him by statute, ordinance, or contract in violation of RCW 49.52.050. The amount of wages unlawfully withheld shall be proved at trial.

7.3     Defendants wilfully and with intent to deprive him of part of his wages paid Greg Sellman a lower wage than the wage they were obligated to pay him by statute, ordinance, or contract in violation of RCW 49.52.050. The amount of wages unlawfully withheld shall be proved at trial.

7.4     Mr. Navarre and Mr. Sellman are entitled to judgment for twice the amount of the wages unlawfully withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees pursuant to RCW 49.52.070.

## VIII.   JURY DEMAND

8.1     Mr. Sellman and Mr. Navarre request and demand trial by jury. Mr. Sellman and Mr. Navarre will file a separate pleading and pay the necessary fee to obtain a jury trial in King County.

## IX.   REQUST FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in their favor against the DEFENDANTS, as follows:

1. Judgment for each plaintiff in an amount to be proven at trial for all economic and non-economic damages.

2. Prejudgment interest for each plaintiff in an amount to be proven at trial.

3. Double damages for unlawfully withheld wages.

4. Recovery of all costs and attorney's fees incurred herein by each plaintiff

COMPLAINT - 12

**MCGAVICK GRAVES**
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

5.  Judgment jointly and severally against BIPI and Mr. Kime.

6.  Such additional relief as this Court deems just and equitable.

DATED this 21st day of July, 2021.

                                        MCGAVICK GRAVES, P.S.

                                        By: _____
                                              John M. Cummings, WSBA# 40505
                                              Attorneys for the Plaintiffs

COMPLAINT - 13

**MCGAVICK GRAVES**
A Professional Services Corporation
1102 Broadway, Suite 500 • Tacoma, Washington 98402
Telephone (253) 627-1181 • Fax (253) 627-2247

# Exhibit A







