THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GREGORY SELLMAN and VINCENT NAVARRE,<br><br>                    Plaintiffs,<br>     v.<br><br>BOEHRINGER INGELHEIM PHARMACEUTICALS INC. and ROBERT KIME,<br><br>                    Defendants. | CASE NO. C21-1105-JCC<br><br>ORDER |

Before the Court is Defendants' motion to compel arbitration and dismiss (Dkt. No. 16). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby GRANTS the motion for the reasons explained below.

I.     BACKGROUND

Plaintiffs Gregory Sellman and Vincent Navarre are suing their former employer Boehringer Ingelheim Pharmaceuticals Inc. ("BIPI"), and their former supervisor, Robert Kime ("Defendants") for employment discrimination, wrongful discharge, and wage theft. (*See* Dkt. No. 1-1.) When Sellman accepted an offer of employment with BIPI in February 2014, he signed the offer letter twice—once to take the job and again to acknowledge as follows:

> By signing below, I acknowledge that I have read and understand the
> Employment Arbitration Plan and Rules (the Plan); I understand that it is my

> obligation to arbitrate covered disputes; and the Company provided me with a copy of the Plan and the Employment Arbitration Rules and Mediation Procedure of the American Arbitration Association (AAA). The AAA rules are also available on line [sic] at http://www.adr.org.

(Dkt. No. 17-1 at 4.) When Navarre accepted his employment offer in January 2018, he too signed an identically worded acknowledgment. (Dkt. No. 17-5 at 4.)

The 2013 arbitration plan ("2013 Plan") in effect when Sellman signed his offer letter provides that arbitration is "the required and exclusive forum for the resolution of all disputes (other than disputes by which statute are not arbitrable) arising out of or in any way related to employment" between Plaintiffs and BIPI or any of BIPI's "current and former officers, directors, employees and agents."[1] (Dkt. No. 17-2 at 2.) The 2013 Plan also forbids multi-party or class arbitration. (*Id.* at 3.) The arbitration plan in effect when Navarre signed his offer letter was BIPI's 2017 arbitration agreement ("2017 Agreement"). Though worded in slightly different terms, the relevant provisions of the 2017 Agreement are substantially similar to those in the 2013 Plan, likewise requiring arbitration of "all disputes . . . arising out of or in any way related to employment . . . that may arise between an employee . . . and the Company, its predecessors, successors," and so on. (Dkt. No 17-6 at 2; *see also id.* at 3 (forbidding multi-party arbitration).)

Defendants move to compel arbitration, citing the acknowledgments Plaintiffs signed. (Dkt. No. 16 at 3–4.) Plaintiffs oppose the motion, chiefly asserting that they never received the arbitration agreements referenced in the offer letters that they signed, and that the documents are generally unenforceable. (*See* Dkt. No. 19 at 4–12.)

## II. DISCUSSION

### A. Motion to Strike

Despite previously acknowledging that they had read and understood BIPI's arbitration agreements, Plaintiffs initially asserted, in opposing the instant motion, that they had never even seen these documents. (Dkt. Nos. 20 at 1–2, 21 at 1–2.) However, BIPI's records of the new-hire

---

[1] The parties do not appear to dispute that the arbitration provisions, if valid, would cover disputes with Defendant Robert Kime.

ORDER
C21-1105-JCC
PAGE - 2

1  packets it sent to Plaintiffs include archived data from the original e-mails to Sellman and
2  Navarre attaching copies of the arbitration documents, along with the AAA rules. (Dkt. Nos. 29
3  at 4, 29-1 at 2–46 (screenshot of e-mail to Sellman, with attachments), 38–92 (same for
4  Navarre).) Faced with this evidence, Plaintiffs now assert that they do not *recall* receiving these
5  documents and appear to suggest, without evidentiary support, that these e-mails were never sent
6  or may have been doctored or fabricated to help bolster the case for arbitration. (*See* Dkt. Nos. 25
7  at 2, 26 at 2.)
8        Plaintiffs ask the Court to strike this evidence because Defendants filed it with their reply
9  brief. (Dkt. No. 31.) Plaintiffs, however, responded to this evidence by filing a second round of
10 declarations and a surreply. (Dkt. Nos. 24–26, 31). The Court has considered these filings in
11 ruling on Defendants' motion. The evidence in question is not so much "new" as it is a rebuttal
12 to Plaintiffs' insistence that they never received documents they had acknowledged receiving.
13 The motion to strike is DENIED.

14       **B.  Motion to Compel – Legal Standard**
15       Under the Federal Arbitration Act ("FAA"), the Court's review is limited to deciding
16 whether an arbitration clause (1) is valid and (2) covers the dispute at issue. *See Nguyen v.*
17 *Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Federal courts determine validity
18 using ordinary state law rules of contract formation. *Id.* Contract defenses like unconscionability
19 can thus invalidate an arbitration clause. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921
20 (9th Cir. 2013) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)).
21       The party seeking to compel arbitration "bears the burden of proving the existence of an
22 agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomm. Am.*,
23 845 F.3d 1279, 1283 (9th Cir. 2017). If an agreement exists, the FAA "leaves no place for the
24 exercise of discretion . . . , but instead mandates that district courts *shall* direct the parties to
25 proceed to arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 213 (1985) (emphasis
26 original).

### C. Enforceability of the Arbitration Clauses

Much ink has been spilled over this straightforward case: Plaintiffs signed employment offer letters in which they signed not only to accept employment, but also did so a second time to acknowledge having received, read, and understood BIPI's arbitration agreements. (Dkt. Nos. 17-1 at 4, 17-5 at 4.) BIPI's employment offer was "contingent upon you acknowledging receipt and acceptance" of the arbitration agreements. (Dkt. Nos. 17-1 at 3, 17-5 at 3.) It is hornbook contract law that Plaintiffs could not accept the job offers without also accepting the arbitration agreements. *See, e.g.*, *Rorvig v. Douglas*, 873 P.2d 492, 495–96 (Wash. 1994) (an acceptance purporting to accept an offer other than on its original terms is invalid).[2] The offer letters expressly reference the arbitration agreements and the AAA rules, and both Plaintiffs acknowledged "that it is my obligation to arbitrate covered disputes." (Dkt. Nos. 17-1 at 4, 17-5 at 4.) Consequently, these are enforceable arbitration agreements. *See Todd v. Venwest Yachts, Inc.*, 111 P.3d 282, 284 (Wash. Ct. App. 2005) (""[W]hen the parties' employment agreement has incorporated an arbitration clause by reference, the arbitration clause may be enforced.") (citing *David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London)*, 923 F.2d 245, 249 (2d Cir. 1991); *Exch. Mut. Ins. Co. v. Haskell Co.*, 742 F.2d 274, 276 (6th Cir. 1984)).

As mentioned above, Plaintiffs initially asserted that they never received these arbitration agreements. (*See* Dkt. Nos. 20 at 1–2, 21 at 1–2.) They now assert that they "do not recall" receiving them. (Dkt. Nos. 25 at 3, 26 at 2). Regardless, the signed acknowledgments are independent evidence of actual receipt, and absent fraud or the like, "a party to a contract which he has voluntarily signed will not be heard to declare that he did not read it, or . . . . to repudiate his own signature . . . . The whole panoply of contract law" rests on this principle. *Nat'l Bank of Wash. v. Equity Inv'rs*, 506 P.2d 20, 36 (Wash. 1973). In any case, there is ample additional evidence that BIPI in fact sent these documents to Plaintiffs. (*See* Dkt. Nos. 29, 29-1.)[3]

---

[2] The parties do not dispute that Washington law governs this dispute.

[3] Although the screenshots showing partial emails to Plaintiffs attaching arbitration documents appear to depict form or draft emails or metadata rather than the emails themselves, Melissa

      Plaintiffs' other arguments fare no better. They assert that the 2013 Plan is unenforceable because BIPI could unilaterally amend it, (Dkt. No. 19 at 4), but this is irrelevant because BIPI is not seeking to enforce any amended provision of that Plan. Plaintiffs cite two non-Washington cases where courts held that unilaterally amendable arbitration clauses were unenforceable, but those cases are readily distinguishable.[4]

      Moreover, BIPI's arbitration agreements have adequate consideration. BIPI promised to let Plaintiffs *begin* employment in exchange for, among other things, their promise to arbitrate covered disputes. *Browning v. 24 Hour Fitness, Inc.*, 2006 WL 151933, slip op. at 2 (W.D. Wash. 2006) ("[T]he agreement to arbitrate itself was supported by consideration. Plaintiff accepted the offer of employment with the arbitration provision as part of that offer."). *Continued* employment may or may not be valid consideration depending on the circumstances (*see* Dkt. No. 19 at 6), but Defendants' motion does not present that issue, (*see* Dkt. No. 16 at 14–15.) Moreover, mutual promises to forego a jury trial and arbitrate are sufficient to create a bilateral contract under Washington law. *See Allbaugh v. Perma-Bound*, 2009 WL 10676437, slip op. at 7 (W.D. Wash. 2009).

      Nor does anything suggest that the arbitration agreements are unconscionable. An employment offer conditioned on the employee agreeing to arbitration is not procedurally unconscionable unless "[a]t a minimum," there is "some evidence that the employer refused to respond to her questions or concerns, placed undue pressure . . . to sign the agreement without

---

Faughan, who works for BIPI in HR and talent acquisition roles, states that new-hire packets "always included the current arbitration plan . . . or agreement." (Dkt. No. 29 at 2.) That is proof of actual receipt. *See* Fed. R. Evid. 406 ("Evidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice.").

[4] *Heurtebise v. Reliable Bus. Comps.* involved an arbitration clause in an employee handbook that purported to bind only employees and not the employer. *See* 550 N.W. 2d 243, 247 (Mich. 1996). In *Snow v. BE & K Constr. Co.*, the "[p]laintiff never signed anything expressing assent to the booklet" containing the arbitration clause, and the clause in question could be amended *without notice* and did not even make arbitration mandatory. 126 F. Supp. 2d 5, 13–15 (D. Me. 2001).

providing . . . a reasonable opportunity to consider its terms, and/or that the terms . . . were set forth . . . such . . . that an average person could not understand them." *Zuver v. Airtouch Commc'ns, Inc.*, 103 P.3d 753, 761 (Wash. 2004). BIPI gave Sellman and Navarre seven and three days, respectively, to consider their employment offers; BIPI advised that "additional time to consider the offer" could be made available and invited them to contact it with any questions. (Dkt. Nos. 17-1 at 3, 17-5 at 3–4.) There is no procedural unconscionability. *See Zuver* at 103 P.3d 762 (citing *Luna v. Household Fin. Corp.*, 236 F. Supp. 2d 1166, 1176 (W.D. Wash. 2002)) (suggesting that three days is a reasonable period to consider an agreement).

Nor are the arbitration agreements substantively unconscionable. Nothing about them can be described as "monstrously harsh," calloused, or shocking. *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1199 (Wash. 2013). They do not impose harsh procedural restrictions or excuse the arbitrator from following the law. It is not unconscionable to require Plaintiffs to litigate their claims separately even if the facts are intertwined, (Dkt. No. 19 at 11), because they can still be witnesses in each other's cases. (*See, e.g.*, Dkt. No. 29-1 at 22 (AAA rules listing witnesses as among many matters to be considered at an arbitration management conference before hearing).) [5]

### III.   CONCLUSION

For the foregoing reasons, Defendants' motion to compel arbitration (Dkt. No. 16) is GRANTED. This action is DISMISSED without prejudice. The clerk is directed to CLOSE the case.

//

//

//

---

[5] Both arbitration agreements state that "any dispute as to the arbitrability of a particular claim . . . shall be resolved in arbitration." (Dkt. Nos. 17-2 at 3, 6, 17-6 at 3, 6.) The parties do not address this issue, so the Court does not either.

DATED this 27th day of October 2021.

_John C. Coughenour_
John C. Coughenour
UNITED STATES DISTRICT JUDGE